UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESUS FUENMAYOR RODRIGUEZ,<br><br>              Petitioner,<br>    v.<br><br>KRISTI NOEM et al.,<br><br>              Respondents. | CASE NO. 2:26-cv-00673-LK<br><br>ORDER GRANTING IN PART<br>AND DENYING IN PART<br>PETITION FOR WRIT OF HABEAS<br>CORPUS |

This matter comes before the Court on Petitioner Jesus Fuenmayor Rodriguez's Petition for Writ of Habeas Corpus. Dkt. No. 1. For the reasons stated below, the Court grants the petition in part and denies it in part.[1]

## I.   BACKGROUND

Fuenmayor Rodriguez is a citizen and national of Venezuela who is currently detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 1 at 3, 5. He entered the United States on September 13, 2024 as an applicant for admission using the CBP One

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized by statute").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

application, and sought asylum. *Id.* at 5, 8–9; Dkt. No. 5 at 1. On September 14, 2024, U.S. Customs and Border Protection ("CBP") issued Fuenmayor Rodriguez a Notice to Appear ("NTA") charging him as removable from the United States under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I); the NTA also included a checked box indicating, "You are an arriving alien." Dkt. No. 6-1 at 2, 5. CBP scheduled Fuenmayor Rodriguez to appear before an immigration judge in removal proceedings, *id.* at 2, enrolled him in the Alternatives to Detention ("ATD") program, Dkt. No. 5 at 2, and released him on humanitarian parole for two years, through September 12, 2026, Dkt. No. 1 at 9.

Once in the United States, Fuenmayor Rodriguez was placed in an Intensive Supervision Appearance Program ("ISAP"). Dkt. No. 1 at 9. As an ISAP participant, Fuenmayor Rodriguez was required to wear a wrist-attached monitoring device and attend weekly check-ins in Yakima, Washington. *Id.* at 9–11.

In early January 2026, U.S. Immigration and Customs Enforcement ("ICE") required Fuenmayor Rodriguez to attend an in-person meeting at the ICE Yakima Field Office. *Id.* at 12. According to Fuenmayor Rodriguez, when he arrived at that Field Office on January 12, 2026, he was taken into custody without notice or explanation, even though he had complied with all conditions of his release. *Id.*; *see also id.* at 13 (alleging that "at the time of the arrest and detention, ICE did not give Petitioner notice or reason for the re-detention, and therefore [he] did not have any opportunity to contest, rebut, or challenge, the reasons for ICE's re-detention prior to being arrested and detained."). A warrant for his arrest was issued on the same day. Dkt. No. 6-3 at 2.

Although the record does not contain Fuenmayor Rodriguez's original Order of Release on Recognizance ("OREC"), it does contain documentation that his OREC was cancelled on January 12, 2026 "for the reasons stated in the Form I-213, dated January 12, 2026." Dkt. No. 6-4 at 2. In turn, the Form I-213, Record of Deportable/Inadmissible Alien, dated January 12, 2026, states that

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

Fuenmayor Rodriguez was "amenable to arrest due to his multiple ATD [(Alternatives to Detention program)] violations and violating his conditions of [his OREC]." Dkt. No. 6-2 at 3.

Fuenmayor Rodriguez was subsequently transferred to the NWIPC. Dkt. No. 1 at 12. He avers that "about a month" after he was transferred to the NWIPC, he received the completed Form I-213 and "learned for the first time that there were notations of violations of 'Intensive Supervision Appearance Program' that 'involved' [him]." Id. at 13. According to Fuenmayor Rodriguez, "[n]o specifics were provided as to what the violations were, nor in what capacity or to what degree it 'involved' [him]." Id.

Respondents[2] tell a different story about the alleged ATD violations. They aver that the contractor that administers the ATD program recorded in its database that Fuenmayor Rodriguez "missed biometric check ins and failed a home visit" on seven dates, including most recently on January 6, 2026. Dkt. No. 5 at 2. According to Respondents, ICE detained him on January 12, 2026 because of those ATD violations. Id. at 3.

The I-213 indicates that Fuenmayor Rodriguez has no pending appeals or immigration applications or petitions that would permit him to stay in the United States, Dkt. No. 6-2 at 5, but according to Fuenmayor Rodriguez, he "timely filed his asylum application on or about April 10, 2025, and that is the operative application pending before the Immigration Court," Dkt. No. 1 at 13. Respondents acknowledge that Fuenmayor Rodriguez is scheduled for a final merits hearing on his asylum application on March 25, 2026. Id. They note that he "has not had nor is he currently scheduled for a bond hearing." Id.

---

[2] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, see Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, see Doe v. Garland, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

On February 25, 2026, Fuenmayor Rodriguez filed this habeas petition. Respondents filed their response on March 12, 2026, Dkt. No. 4, and Fuenmayor Rodriguez filed a traverse on March 17, 2026, Dkt. No. 7.[3]

## II.  DISCUSSION

Fuenmayor Rodriguez asserts violations of his substantive and procedural due process rights under the Fifth Amendment. Dkt. No. 1 at 18–21. His procedural due process claim asserts that "Respondents revoked [his] release and deprived him of liberty without providing him written notice and a meaningful opportunity to be heard by a neutral decisionmaker prior to his re-detention." *Id.* at 19. His substantive due process claim asserts that his detention does not serve "a legitimate, nonpunitive purpose" because he is not a danger to the community or a flight risk. *Id.* at 20 (citing *Zadvydas v. Davis*, 533 U.S. 678, 690–92 (2001)).

As relief for these alleged violations, Fuenmayor Rodriguez seeks (1) immediate release, or alternatively, "an immediate, constitutionally adequate individualized custody determination at which the government bears the burden to justify continued detention and the Court considers less restrictive alternatives to detention," (2) a prohibition on his "re-detention by Respondents unless [he] is provided a pre-detention hearing before an immigration judge, where the government bears the burden to justify material changed conditions require [his] detention, and the Court considers less restrictive alternatives to detention," and (3) his reasonable attorney's fees and costs. *Id.* at 21.

### A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody

---

[3] The Court does not consider the "Statement of Facts," *id.* at 3–4, in the traverse because that section is devoid of citations to evidence in the record. *See* LCR 10(e)(6) (requiring citations to evidence in the record).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 4

upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*, 533 U.S. at 687.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

**B.      Fuenmayor Rodriguez has Established a Due Process Violation**

       1.   Applicability of the Due Process Clause

Like many petitions before the Court, Fuenmayor Rodriguez's petition ignores the statute to which he is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies. *See, e.g.*, Dkt. No. 1 at 18–21. But the Ninth Circuit has rejected such a proposition, and this Court does too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place[.]" *Id.*; *see also id.* at 1203 (Because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"); *Demore*, 538 U.S. at 529 n.11 (in response to a dissent "suggesti[ng] that [noncitizens] are entitled to an immediate hearing," pointing to *Zadvydas*, in which the Supreme Court "permit[ed] [noncitizens] to be detained for several months prior to such a hearing").

As Respondents argue, Dkt. No. 4 at 4, the statutory provision applicable here is Section 1225(b). For the reasons set forth in the Court's orders in *Dieng v. Hermosillo*, 2:26-cv-00190-LK, 2026 WL 411857, at *3–5 (W.D. Wash. Feb. 13, 2026), and *Albornoz v. Hermosillo*, No. 2:25-CV-02713-LK, 2026 WL 444983, at *3–4 (W.D. Wash. Feb. 17, 2026), the Court finds that the Due Process Clause is applicable in this case and adopts the analysis from those orders. The

Court also reiterates that humanitarian parole under Section 1225(b) can establish the same kinds of liberty interests described in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *Flores Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *5 (W.D. Wash. Jan. 20, 2026) (collecting cases). Here, Fuenmayor Rodriguez has established such an interest. While on parole, he worked, "built a community, and structured his life in reliance on the government's supervision framework." Dkt. No. 1 at 12; *see also* Dkt. No. 6-2 at 4 (Fuenmayor Rodriguez stated he was working as of January 12, 2026); Dkt. No. 7-4 at 4 (BI ISAP report noting he was working).

As noted above, Fuenmayor Rodriguez does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1225(b), and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Doe v. Andrews*, No. 1:25-CV-00333-JLT-HBK (HC), 2025 WL 3280777, at *7 (E.D. Cal. Nov. 25, 2025) (quoting *Gonzalez Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020)), the Court addresses the process required here.

### 2. The Process Required

Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). In other words, if a noncitizen has been granted parole, it means that a DHS official with authority decided that there were either "urgent

humanitarian reasons" or "significant public benefit" justifying the parole of that individual, and that the individual did not pose a security or flight risk.

Parole automatically terminates if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized," and "no written notice shall be required" for automatic termination. 8 C.F.R. § 212.5(e)(1). Otherwise, for parole to be terminated, (1) "the purpose for which parole was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States"; and (2) written notice must be provided to the noncitizen. 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled[.]").

Once a noncitizen's parole has terminated—either automatically or on notice—"any order of exclusion, deportation, or removal previously entered shall be executed." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 C.F.R. § 212.5(e)(1) ("[T]he [noncitizen] shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required."). "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] shall again be released on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody." 8 C.F.R. § 212.5(e)(2)(i).

    3.  <u>Fuenmayor Rodriguez has Shown that the Government Failed to Follow the Required Process</u>

As discussed above, Fuenmayor Rodriguez asserts, among other things, that "Respondents revoked [his] release and deprived him of liberty without providing him written notice" in violation of the Due Process Clause of the Fifth Amendment. Dkt. No. 1 at 19. Respondents acknowledge

that noncitizens otherwise subject to detention under 8 U.S.C. § 1225(b) can be released on humanitarian parole. Dkt. No. 4 at 4. They argue that when the government revoked his parole, Fuenmayor Rodriguez was "return[ed] . . . to mandatory detention status under 8 U.S.C. § 1225(b)(2)(A)." *Id.*

However, Fuenmayor Rodriguez's detention status after his parole was revoked sheds no light on whether his parole was revoked in compliance with applicable law. On that point, it is undisputed that Fuenmayor Rodriguez's two-year period of parole had not been revoked prior to his arrest, *see* Dkt. No. 1 at 9 (granting parole until September 12, 2026), and Respondents also do not contest Fuenmayor Rodriguez's allegations that they did not provide him with written notice explaining the basis for the revocation of his parole before or at the time of his arrest. *See generally* Dkt. No. 4. Indeed, Respondents do not dispute that they failed to provide Fuenmayor Rodriguez with the written notice required by 8 C.F.R. § 212.5(e)(2)(i) until approximately a month after his arrest. Dkt. No. 1 at 13. Although Respondents contend that a "memo informing him of the reason for cancellation [of his temporary release] was issued," Dkt. No. 4 at 2–3, the memorandum they cite does not include the reason, Dkt. No. 6-4 at 2 (noting that the reason was included in the I-213). Nor does the memorandum state or reflect that it was issued to Fuenmayor Rodriguez or when. *Id.* (memorandum stating that it was a "Memorandum to File" (capitalization altered)). Furthermore, this internal memorandum seems to purport to replace the OREC, which typically contains a cancellation section; the memorandum states without explanation that "[t]his memo has been created because the I-220A [(the OREC)] is not immediately available to complete and serves as notice of cancellation on the date listed below in lieu of completing the cancellation portion of the form itself." *Id.*

Respondents also have put forth no evidence that "the purpose for which parole was authorized" has been accomplished or that a relevant official opined that "neither humanitarian

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 9

reasons nor public benefit warrants the continued presence" of Fuenmayor Rodriguez in the United States. *See generally* Dkt. Nos. 4–6. To the contrary, Respondents only aver that Fuenmayor Rodriguez's parole was revoked because of (unsubstantiated) ATD violations. Dkt. No. 4 at 1–2; *see also* Dkt. No. 6-2 at 3 (Form I-213, Record of Deportable/Inadmissible Alien, dated January 12, 2026, stating that Fuenmayor Rodriguez was "amenable to arrest due to his multiple ATD violations and violating his conditions of [his OREC]"). Thus, the Court concludes that the manner in which the government revoked Fuenmayor Rodriguez's parole violated 8 C.F.R. § 212.5(e)(2)(i) and failed to comport with the process due to him. *See Torres v. Noem*, No. C25-2697JLR, 2026 WL 234076, at \*4 (W.D. Wash. Jan. 29, 2026) (finding that by revoking the petitioner's parole without following the regulatory and statutory requirements, "DHS failed to provide [petitioner] with the minimum process due"); *Gabriel v. Bondi*, No. 25-CV-4298 (KMM/EMB), 2025 WL 3443584, at \*6 (D. Minn. Dec. 1, 2025) ("Without any suggestion that such a determination [as that required under the statute and regulation] occurred, Respondents could not have complied with § 1182(d)(5)(A) and Part 212.5(e)(2)(i) in revoking Petitioner's parole," and accordingly, "the revocation, and[ ] . . . Petitioner's detention[ ] is unlawful.").

    4. <u>*Mathews* Analysis</u>

Fuenmayor Rodriguez contends that the standard laid out in *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) applies here. *See* Dkt. No. 1 at 7. Respondents do not apply *Mathews* and instead argue that Fuenmayor Rodriguez is mandatorily detained. Dkt. No. 4 at 4. For the reasons this Court previously explained in *Flores Torres*, 2026 WL 145715, regarding the due process implications of the revocation of parole, the Court proceeds to apply the *Mathews* factors.

Under *Mathews*, Courts analyze three factors to determine whether an administrative procedure provides due process:

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 10

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, it is undisputed that Fuenmayor Rodriguez has a liberty interest in being free from imprisonment. *Zadvydas*, 533 U.S. at 690. His liberty interest "is valuable and must be seen as within the protection of the [Due Process clause]" such that "its termination calls for some orderly process," *Morrissey*, 408 U.S. at 482, as provided under 8 C.F.R. § 212.5(e)(2). A "petitioner's liberty interest [does] not expire along with his parole." *Quiroga-Chaparro v. Warden of the Golden State Annex Det. Facility*, No. 1:25-CV-1731 AC, 2025 WL 3771473, at *4 (E.D. Cal. Dec. 31, 2025) (citation modified). Respondents attempt to distinguish *Albornoz* by arguing that Fuenmayor Rodriguez was not granted work authorization, Dkt. No. 4 at 9–10, but the Court agrees with the reasoning in *Quiroga-Chaparro* that the lack of work authorization does not negate a liberty interest. 2025 WL 3771473, at *4–5.[4] Because Fuenmayor Rodriguez had an interest in his liberty and had been on parole for approximately a year and a half before he was re-detained, this factor weighs in his favor.

---

[4] The Court notes that the reason for the May 2025 denial of work authorization was that Fuenmayor Rodriguez's parole had expired or terminated. Dkt. No. 6-5 at 2. This appears to be mistaken, as it is undisputed that his parole was ongoing until January 2026. Regardless, Fuenmayor Rodriguez worked while on parole with the government's knowledge. Dkt. No. 7-4 at 4.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 11

Turning to the second factor, for the reasons stated in this Court's order in *Dieng*, due process at least requires that (1) the government justify the basis for re-detention, as prescribed by the statute and its implementing regulations, and (2) Fuenmayor Rodriguez be given "the opportunity to be heard" with respect to the government's basis for re-detention under the applicable statutory and regulatory framework "at a meaningful time and in a meaningful manner." *Dieng*, 2026 WL 411857, at *8 (citation modified). Here, as discussed above, the government did not follow the procedures required by its own regulations in revoking Fuenmayor Rodriguez's parole. The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due prior to being detained.[5] "[T]he additional procedural safeguards identified in 8 C.F.R. § 212.5 are not only valuable for preventing the erroneous deprivation of an important interest, they are required by the Section 1225 statutory scheme[.]" *O.F.B. v. Maldonado*, No. 25-CV-6336 (HG), 2025 WL 3277677, at *7 (E.D.N.Y. Nov. 25, 2025). The risk of erroneous deprivation is exacerbated here because the government's records appear inconsistent. Respondents' declaration states that Fuenmayor Rodriguez had three ATD violations between December 2024 and June 2025, Dkt. 5 at 2, but his most recent Individual Service Plan in July 2025 lists none of those violations, Dkt. No. 7-4. This factor favors Fuenmayor Rodriguez.

---

[5] *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where "ICE revoked petitioner's release on the grounds that his removal was reasonably foreseeable, but it did not provide petitioner the process required by its own regulations, it forced petitioner to file a habeas petition to obtain relief, and [it] has failed to identify any evidence that petitioner's removal was actually reasonably foreseeable at any point"); *Salazar v. Casey*, No. 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025) ("[T]he risk of an erroneous deprivation of [petitioner's] interest [in remaining out of custody pursuant to her humanitarian parole] is high as Petitioner's parole was revoked without providing her a reason for revocation or giving her an opportunity to be heard"); *Munoz Materano v. Arteta*, No. 25-CV-6137-ER, 2025 WL 2630826, at *14 (S.D.N.Y. Sept. 12, 2025) (finding a risk of erroneous deprivation where "Respondents provide[d] no indication that an individualized determination was made as to the revocation of [Petitioner's] parole; nor d[id] they articulate . . . either that the purpose for which [Petitioner's] parole was authorized ha[d] been accomplished, []or that neither humanitarian reasons nor public benefit warrant[ed] his continued presence in the United States.").

With respect to the last factor, "the government's interest in efficient administration of the immigration laws at the border is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5 because it is required to follow its own regulations." *O.F.B.,* 2025 WL 3277677, at *7 (citation modified). Therefore, this factor also weighs in favor of Fuenmayor Rodriguez.

Under *Mathews*, the Court finds that Respondents failed to provide Fuenmayor Rodriguez with the procedures due to his under the Due Process Clause, and accordingly, his detention is unlawful.

**C.    The Court Denies Fuenmayor Rodriguez's Request for a Permanent Injunction**

Fuenmayor Rodriguez requests an order prohibiting his "re-detention by Respondents unless [he] is provided a pre-detention hearing before an immigration judge, where the government bears the burden to justify material changed conditions require [his] detention, and the Court considers less restrictive alternatives to detention[.]" Dkt. No. 1 at 21.

Where habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953)).

Nowhere in Fuenmayor Rodriguez's petition does he allege that re-detention is likely, or that such detention is likely to occur without proper notice and an opportunity to be heard. Without argument or evidence that unlawful re-detention is likely to occur, Fuenmayor Rodriguez's request

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

constitutes nothing more than a "mere possibility" that does not entitle him to relief. *Id.* (citation modified); *see also Indep. Towers of Wash.*, 350 F.3d at 929 ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). For this reason, his request for injunctive relief preventing his re-detention is denied.

### III.   CONCLUSION

For the reasons stated above, the petition writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1.   Respondents shall immediately release Fuenmayor Rodriguez from custody subject to the conditions of his most recent parole agreement and return his personal property to him;

2.   The parties shall file a Joint Status Report by March 24, 2026, confirming that Fuenmayor Rodriguez has been released;

3.   Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such

template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 23rd day of March, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 15